ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANDRES D. ROJO,

          Plaintiff,      :      06 Civ. 13574 (HB)

   -against-                      :      OPINION & ORDER

DEUTSCHE BANK,

          Defendant.
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

    This action involves claims of fraudulent inducement, promissory estoppel, unjust enrichment and *quantum meruit* that arise from the employment of Plaintiff Andres B. Rojo ("Plaintiff" or "Rojo") at Defendant Deutsche Bank ("Deutsche Bank"). Before the Court are a multitude of motions and cross-motions relating to evidence and testimony sought to be introduced and/or precluded in the upcoming bench trial in this action. Specifically, Defendant Deutsche Bank moves to amend the Joint Pretrial Order ("JPTO") that was submitted to the Honorable Leonard B. Sand on January 16, 2009[1] by adding evidence that can be roughly categorized into four areas: (1) documents and testimony sought from JP Morgan Chase, Rojo's previous employer, pursuant to a trial subpoena relating to Rojo's previous compensation (the "JPMC Documents"); (2) testimony of Stacey Geller, a Human Resources professional at Deutsche Bank who played a role in determining Rojo's compensation at Deutsche Bank (the "Geller testimony"); (3) market research and survey documents from the McLagan Company that Deutsche Bank purportedly uses to assess compensation levels for executives at the firm (the "McLagan Documents"); and (4) documents that show compensation of other relevant executives at Deutsche Bank (the "Executive Compensation Documents"). Rojo opposes Deutsche Bank's motion to amend, and concomitantly cross-moves to (1) quash the trial subpoena pursuant to which Deutsche Bank seeks the JPMC Documents and (2) preclude the Geller testimony, McLagan Documents and Executive Compensation Documents. Rojo also cross-moves to preclude the testimony of five witnesses who, although identified in Deutsche Bank's portion of the JPTO some nine months ago, were not disclosed pursuant to Rule 26(a) (the "Additional Five

---

[1] This matter was reassigned to the undersigned on September 14, 2009. A pretrial conference was held on September 23, 2009. The non-jury trial in this action will begin on February 23, 2010, as set forth in Section III of this Opinion & Order.

1

Witnesses" testimony) and for monetary sanctions in the form of attorneys' fees and costs pursuant to Rule 37. For the reasons set forth below, the parties' motions are granted in part and denied in part.

## I. FACTUAL BACKGROUND

The facts of this case were reviewed in some detail in Judge Sand's decision on Deutsche Bank's motion for summary judgment, and need not be repeated at length here. *See Rojo v. Deutsche Bank*, No. 06 Civ. 13574 (LBS), 2008 U.S. Dist. LEXIS 94007 (S.D.N.Y. Nov. 5, 2008), *reconsid. denied*, 2008 U.S. Dist. LEXIS 101761 (S.D.N.Y. Dec. 16, 2008). It is sufficient to relay here that Rojo's claims arise from allegations that he was fraudulently induced to sign an employment contract with Deutsche Bank based on the firm's representations as to his level of compensation, and that he did not receive the promised compensation while employed at Deutsche Bank. An essential element of Rojo's recovery under the remaining theories of liability will be a showing that his compensation at Deutsche Bank was not commensurate with the fair market value of his services. *See, e.g., Advanced Conservation Sys., Inc. v. Elissa & Scott Realty Corp.*, 268 A.D.2d 543, 544 (2d Dep't 2000). Accordingly, Deutsche Bank's motion to amend the JPTO seeks to include evidence that the firm contends will disprove any allegation that Rojo was not adequately compensated. Discovery in this action closed in March 2008, and the parties' JPTO was submitted on January 16, 2009.

## II. DISCUSSION

### A.  JPMC Documents

#### 1. *Applicable Legal Standards*

##### (a) *Amendment of Joint Pretrial order*

Rule 16(e) of the Federal Rules of Civil Procedure provides that a proposed pretrial order may be modified "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). However, the Second Circuit has indicated that the district court retains significant discretion to determine whether to permit amendment of a joint pretrial order. *See, e.g., Henry v. Department of Transp.*, 69 Fed. Appx. 478, 481 (2d Cir. 2003) ("The decision to permit amendment of the proposed joint pretrial order rests within the discretion of the Court and should be granted when 'the interests of justice make such a course desirable.'") (quoting *Madison Consultants v. Federal Deposit Ins. Corp.*, 710 F.2d 57, 62 n.3 (2d Cir. 1983)); *see also Clark v. Pennsylvania Ry. Co.*, 328 F.2d 591, 594 (2d Cir. 1964); *Laguna v. America Export Isbrandtsen Lines, inc.*, 439 F.2d 97, 101-02 (2d

Cir. 1971) ("We have not viewed . . . modification [of proposed pretrial orders] with hostility."). To determine whether amendment of a pretrial order is appropriate, a court should balance "the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements." *Laguna*, 439 F.2d at 101 (quoting 3 J. Moore, Federal Practice & Procedure ¶ 16.20 at 1136 (3d ed. 1968)). The Court should also consider whether any prejudice would result to the party opposing the amendment. *Henry*, 69 Fed. Appx. at 481 (quoting *Ismail v. Cohen*, 706 F. Supp. 243, 255 (S.D.N.Y. 1989), *aff'd in relevant part and rev'd in part on other grounds*, 899 F.2d 183 (2d Cir. 1990)). The Second Circuit has recently set forth the relevant factors to consider in determining whether a pretrial order should be amended:

> (1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (4) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliance party. Prejudice to the party seeking amendment or modification of the order is also relevant, as a trial court should not refuse to modify a pre-trial order where manifest injustice will result.

*Potthast v. Metro-North R.R. Co.*, 400 F.3d 143, 153 (2d Cir. 2005) (citing *RAPCO, Inc. v. Comm'r*, 85 F.3d 950, 953 (2d Cir. 1996)); *see id.* at 156 (reaffirming need for district courts to allow flexibility in allowing revisions to pretrial orders). The overarching principle in this regard is that "Rule 16 was not intended to function as an inflexible straitjacket on the conduct of litigation or to produce an abstract, perfect equivalence between the pretrial papers and the course of litigation; instead, it was intended to insure the efficient resolution of cases and, most importantly, minimize prejudicial surprise." *Lamborn v. Dittmer*, 873 F.2d 522, 527 (2d Cir. 1989).

### (b) Motion to Quash Trial Subpoena

Although Rule 45 of the Federal Rules of Civil Procedure allows a party to seek documents or testimony from a third party for the purposes of trial or a hearing, district courts in this Circuit have held that parties may not issue such subpoenas "as a means to engage in discovery after the discovery deadline has passed." *Dodson v. CBS Broad. Inc.*, No. 02 Civ. 9270 (KMW) (AJP), 2005 U.S. Dist. LEXIS 30126, at *3-4 (S.D.N.Y. Nov. 29, 2005) (collecting cases). However, a district court has broad discretion "to direct and manage the pre-trial discovery process." *Willis v. Merada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004). Pursuant to that discretion, a court may, in appropriate circumstances, interpret an opposition to a motion to quash

as a motion to reopen discovery. *See McKay v. Triborough Bridge & Tunnel Auth.*, No. 05 Civ. 8936 (RJS), 2007 U.S. Dist. LEXIS 81722, at *2 (S.D.N.Y. Nov. 5, 2007). A party that seeks relief from a discovery schedule, including the reopening of discovery after it has closed, must make an application to the Court demonstrating why good cause exists to modify the schedule. *Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991).

### 2. *Application*

In this case, there is no doubt but that the subpoena to JP Morgan was issued long after the close of discovery, and that it seeks information that could have been sought during discovery. However, Deutsche Bank asserts that the Court should, in its discretion, allow the introduction of the JPMC Documents and related testimony because of their central relevance to the remaining issues in this case, and because they are non-controversial and indisputable and thus will cause no prejudice to Rojo. In the interests of justice, in my discretion I will construe Deutsche Bank's motion to amend the JPTO to include the JPMC Documents and related testimony and its concomitant opposition to Rojo's motion to quash the trial subpoena as a motion to reopen discovery for the limited purpose of gathering information relating to Rojo's previous compensation at JP Morgan before joining Deutsche Bank. So construed, Deutsche Bank's motion is granted.

In its requests for the production of documents, Deutsche Bank requested that Rojo turn over all documents relating to, among other things, the compensation he was paid while employed at JP Morgan. *See* Declaration of Kenneth Turnbull ("Turnbull Decl.") Ex. 5 at 6 (Request No. 2). Rojo objected to the request by stating that it was overbroad and unduly burdensome, and in any event, Rojo averred that to the extent the request sought discoverable documents, he was not in the possession of any such documents. *See id.*, Ex. 6 at 4. Deutsche Bank did not move to compel production at that time, but several months later again requested the information directly from Rojo, who again indicated that he does not possess any relevant documents responsive to the request. *See* Affirmation of Joseph R. DeMatteo ("DeMatteo Aff.") Ex. F; Turnbull Decl. Ex. 4. Accordingly, Deutsche Bank served its trial subpoena on JP Morgan to seek the relevant documents on Rojo's previous compensation directly from his former employer. *See* Turnbull Decl. Ex. 2.

In seeking to quash the subpoena, Rojo argues that it is an improper attempt to reopen discovery, as is evidenced by what he characterizes as an overly broad scope. In fact, the trial

subpoena served on JP Morgan seeks documents limited to the narrow issue of Rojo's compensation at JP Morgan, an undoubtedly legitimate area of inquiry in this matter, and it is therefore a proper trial subpoena.[2] Moreover, as Rojo previously has testified as to his compensation during the relevant time period, the JPM Documents may be used to challenge Rojo's credibility on this issue. *See Wallace v. Life Ins. Co. of N. Am.*, 93 Civ. 6056 (CSH), 1995 U.S. Dist. LEXIS 9690 (S.D.N.Y. July 13, 1995). For these reasons alone, the motion to quash is denied. Moreover, in the interest of trying this matter on its merits and pursuant to the Second Circuit's instruction that amendments to pretrial orders should be viewed with an eye toward flexibility and justice, I find that it is in the parties' best interest to allow Deutsche Bank to obtain the JPMC Documents and to amend the JPTO to include the relevant documents and to identify the person at JP Morgan who will testify as to those documents. Rojo has identified no clear injustice that will befall him if the JPTO is amended to include this evidence; to the extent he will be prejudiced at all, such prejudice will be cured by the opportunity to review all documents and depose any identified JP Morgan witness pursuant to the schedule set forth below. However, given the clear relevance of the JPMC Documents and the absence of any other evidence to reflect Rojo's previous compensation at JP Morgan,[3] Deutsche Bank would experience manifest injustice if the amendment were not permitted, and thus has shown good cause why the discovery schedule should be modified to accommodate this narrow category of discovery that has yet to be obtained. The reopening of discovery and amendment to the JPTO will cause little, if any, inconvenience to the Court, and thus the amendment is proper.

Since the only purpose for any testimony by a JP Morgan representative with respect to the JPMC Documents will be to authenticate and/or to lay a business record foundation, the Court prefers that the parties enter into a stipulation as to these items to obviate the need for additional testimony. However, to the extent a JP Morgan representative will need to testify as to the content

---

[2] Indeed, Plaintiff's counsel has expressly stated that it "do[es] recognize the potential relevance of Mr. Rojo's earnings." *See* Turnbull Decl. Ex. 4. It is also worth noting here that JP Morgan, which has been directed to produce the requested documents, itself has not objected to the breadth of the documents sought or the burden of producing them.

[3] Rojo's offer to stipulate to his compensation during the years 2000 and 2001 does little, if anything, to remedy this deficiency. As Deutsche Bank points out, Rojo's compensation during 2000 may very well have been inflated due to the contemporaneous merger between JP Morgan and Chase Manhattan Bank, and his earnings in 2001 are of limited assistance, as he left JP Morgan's employ in the middle of 2001. In short, Deutsche Bank is entitled to evidence of Rojo's previous compensation going back the five years for which it has sought documents; absent a stipulation to this information, its request for documents directly from the former employer is appropriate.

of the JPMC Documents, such person may be identified on an amended JPTO. Rojo may have the opportunity to depose the JP Morgan witness pursuant to the schedule set forth in Section III of this Opinion & Order.

## B.  Preclusion of Evidence Not Disclosed Pursuant to Federal Rule 26(a)

### 1. *Geller Testimony, McLagan Documents and Executive Compensation Documents*

Deutsche Bank has moved to amend the JPTO to include three categories of evidence that relates to Rojo's compensation package when hired at Deutsche Bank, none of which was disclosed pursuant to Rule 26. To wit, Deutsche Bank seeks to include (1) the McLagan Documents, which it contends were used, among other sources, by Deutsche Bank to determine the compensation that Rojo would be given upon joining the firm; (2) the Executive Compensation Documents, which purportedly reveal how other relevant executives at Deutsche Bank on Rojo's level were compensated; and (3) the testimony of Stacey Geller, an HR representative, relating to both the McLagan Documents and the Executive Compensation Documents. In addition to opposing Deutsche Bank's motion to amend the JPTO to include these categories of evidence, Rojo moves for an affirmative order precluding Deutsche Bank from introducing this or any other related evidence at trial.

It is undisputed that neither the McLagan Documents nor the Executive Compensation Documents were disclosed in Deutsche Bank's initial Rule 26(a)(i) disclosures, nor were the disclosures ever updated to include these documents. Additionally, although Geller was identified in Deutsche Bank's initial disclosures, there was no intimation in those disclosures, nor any update or correction of the disclosures, that indicated that Geller's area of knowledge encompassed the area of executive compensation, and thus Rojo had no indication that he may need to depose her on this topic. Indeed, these items were not brought to Rojo's attention until more than a year after the close of discovery and several months after the parties filed their initial JPTO. Thus the introduction of this evidence at this late stage of the litigation would substantially prejudice Rojo, who has been able to take no discovery with respect to these documents or Geller's proffered testimony as to executive compensation. Deutsche Bank, on the other hand, will suffer minimal prejudice, because it does not appear that the testimony is terribly relevant, and, as this Court found earlier in this Opinion & Order, Deutsche Bank will be permitted to introduce evidence of Rojo's previous compensation at JP Morgan. Thus, under the Rule 16 standard, the Court denies

Deutsche Bank's motion to amend the JPTO to include these three categories of documents and testimony.[4]

Furthermore, Deutsche Bank's failure properly to disclose this evidence pursuant to Rule 26(a) and (e) is sanctionable under Rule 37(c). Deutsche Bank has not met its burden to show that this failure to disclose was substantially justified or harmless. Indeed, Deutsche Bank's opposition to the motion to preclude includes virtually no discussion of any excuse or reason for its failure to disclose, and, as discussed, Rojo would be significantly harmed by the introduction of the proffered evidence at this late stage. Therefore, to the extent Rojo moves to preclude the introduction of the McLagan Documents, the Executive Compensation Documents and the Geller testimony relating to these two categories of documents, his motion is granted.[5] However, I decline Rojo's broader invitation to preclude Deutsche Bank from offering any argument or evidence regarding this subject. To the extent that such evidence was properly disclosed or exchanged during discovery, and subject to the Court's order regarding the JPMC Documents, other evidence regarding the fair market value of Rojo's services will be allowed.

2. *"Additional Five Witnesses"*

Rojo seeks to preclude the testimony of the "Additional Five Witnesses" – Eliza Mohamed, Michael Heil, Wolfgang Jahn, Raymond Hess and Ursula Seifert – who were identified in the JPTO filed in January 2009, but whose names were not specifically disclosed in Deutsche Bank's Rule 26(a) disclosures. Rojo's argument essentially comes down to the contention that he has been prejudiced because Deutsche Bank's late identification of these witnesses prevented him from deposing the witnesses before the discovery cutoff. However, as Deutsche Bank points out, all of the challenged witnesses were referred to in documents produced in discovery, many of which Rojo himself has identified as trial exhibits. *See* Supp. Turnbull Aff. Ex. 12. Moreover, all but one of the "Additional Five Witnesses" were mentioned during the depositions of other witnesses. Indeed, Eliza Mohamed was named in every single deposition taken in this case, including Rojo's own deposition. Thus, if anything, Deutsche Bank's failure to disclose these witnesses was harmless to Rojo, as he clearly was aware of them and chose not to depose any of them. Moreover, Rojo has known about these witnesses at least since the JPTO was filed over

---

[4] Unlike the JPMC Documents, there was no intimation during the discovery period that Deutsche Bank sought any information, nor would be introducing at trial any evidence, relating to these documents or testimony.

[5] Because the McLagan Documents will not be coming into evidence in any event, I need not resolve Rojo's alternative argument that the documents and corresponding Geller testimony is improper expert testimony and should be excluded under Rule 26(a)(ii).

nine months ago; thus, the concerns of "sandbagging" and "trial by ambush" clearly are not present here. *See EMI Music Marketing v. Avatar Records, Inc.*, 334 F. Supp. 2d 442, 445 (S.D.N.Y. 2004) (denying Rule 37(c) preclusion for failure to make Rule 26(a) disclosures where witnesses were identified in pretrial order more than two months before trial and moving party knew of existence and relevance of undisclosed individuals and exhibits previously through discovery process). However, to cure any possible prejudice to Rojo (which, as noted, is slight in my view), Rojo will be permitted to depose the "Additional Five Witnesses" in accordance with the schedule set forth in Section III of this Opinion & Order. *See NIC Holding Corp.*, 2007 WL 1467424 at *5 (finding any prejudice caused by failure to make adequate Rule 26(a) disclosures "is easily obviated . . . by permitting [the plaintiff] to take [the] depositions now" of the previously undisclosed witnesses).

## C.     Attorneys' Fees and Costs

Finally, Rojo moves for sanctions in the form of attorneys' fees and costs incurred in opposing Deutsche Bank's motion and in bringing his motion to preclude evidence and to quash the trial subpoena. Although Rojo's motion in this regard is not wholly frivolous – as discussed above, certain aspects of his motion have in fact been granted – I find in my discretion that Rojo has not made a sufficient showing of his entitlement to monetary sanctions, and that each party should bear its own costs incurred in connection with the motions resolved herein.

## III. CONCLUSION

Accordingly, Rojo's motion to quash the trial subpoena is DENIED and Deutsche Bank's motion to amend the JPTO to include the JPMC Documents and any testimony that is necessary simply to authenticate or explain such documents is GRANTED. Deutsche Bank's motion to amend the JPTO to include the Geller testimony, the McLagan Documents and the Executive Compensation Documents is DENIED and Rojo's concomitant motion to preclude such evidence is GRANTED. Rojo's motion to preclude testimony from the "Additional Five Witnesses" and for monetary sanctions are DENIED. Deutsche Bank shall ensure that all relevant JPMC Documents are identified and produced to Rojo on or before November 30, 2009. Rojo may depose the custodian of the JPMC Document or any other witness identified who will testify regarding the JPMC Documents on or before December 31, 2009. Rojo may also depose any of the "Additional Five Witnesses" on or before December 31, 2009. The parties shall submit an Amended Joint Pretrial Order on or before January 15, 2010. In preparing the Amended Joint

Pretrial Order, the parties should take care to review the individual practices of this Court, as they differ in several material respects from the practices of the Judge Sand, for whom the initial JPTO was prepared. Although the bench trial in this action was scheduled to begin on Friday, February 19, 2010, due to a scheduling conflict it will now begin on Tuesday, February 23, 2010. A trial notification setting forth the deadlines for the submission of all pretrial materials will be sent to the parties in due course.

**IT IS SO ORDERED.**
New York, New York
October 30, 2009

_____
U.S.D.J.